[Civ. No. 17066. First Dist., Div. Two. Mar. 14, 1957.]

GEORGE IVANCOVICH et al., Appellants, v. KATHERINE SULLIVAN et al., Respondents.

Young, Rabinowitz & Chouteau for Appellants.

Sullivan, Roche, Johnson & Farraher and Heller, Ehrman, White & McAuliffe for Respondents.

STONE, J. pro tem.*—The appellant George Ivancovich is a licensed real estate broker, and the other appellant, Dorris Ivancovich, is his wife. George is a brother of the respondent Katherine Sullivan, and the other respondents, Harry Ivancovich Sullivan, William A. K. Sullivan, Katherine Pauline Quinlan and Robert Phillip Sullivan are the children of Katherine Sullivan. For many years George Ivancovich handled certain business affairs, particularly real estate transactions, for his sister Katherine Sullivan and the Ivancovich Estate, of which Katherine Sullivan owned slightly more than one-half.

In one transaction handled by George, his sister Katherine bought the parcel of real property located at the northeasterly corner of Kearney Street and Pine Street in the city and county of San Francisco. Katherine Sullivan took title to this property in her own name and that property is the subject of this action. George advised Katherine to sell another parcel of real property known as the Fairmont Garage in order to finance the purchase. She took his advice and George, through a series of rather complicated transactions, sold the Fairmont Garage property at a profit. George testified that as an expression of appreciation of his services in selling the Fairmont Garage, respondent Katherine Sullivan agreed to deed him and his wife Dorris Ivancovich as joint tenants an undivided one-half interest in the property at Pine and Kearney Streets. By the same conveyance Katherine was to deed herself as joint tenant the remaining one-half interest in the property. George had Katherine execute a deed dated April 18, 1946, but it conveyed the property to George Ivancovich, his wife Dorris and Katherine Sullivan as joint tenants rather than to George and Dorris as to an

---

*Assigned by Chairman of Judicial Council.

undivided one-half and to Katherine as to an undivided one-half interest as joint tenants.

George testified this deed was incorrectly drawn and on April 25, 1946, he had a second deed prepared whereby Katherine, George and Dorris conveyed the property to themselves as joint tenants for life with the remainder interest to the children of Katherine Sullivan, Harry Ivan Sullivan, William A. K. Sullivan, Katherine Pauline Quinlan and Robert Phillip Sullivan in joint tenancy with right of survivorship. George testified he and his wife signed the deed of April 25, 1946, after which he placed it in his file. He denied Katherine Sullivan had signed the deed when he last saw it. Subsequently, on February 10, 1947, George and his wife reconveyed the property to Katherine Sullivan and on February 24, 1947, George had Katherine execute a deed purporting to convey an undivided one-half interest in the property to George and Dorris Ivancovich as joint tenants. George testified that the purpose of the two 1947 deeds was to correct the deed of April 18, 1946, which purportedly conveyed to him and his wife a two-thirds interest in the property, whereas, they should have received only an undivided one-half interest.

Katherine Sullivan testified she did not read any of the deeds she signed because she relied upon her brother George to see that the documents were properly prepared. She further testified in substance that she wanted George and Dorris to have a life estate in one-half the property but upon the death of the survivor of them she intended to have the property go to her children.

There is sharp conflict in the testimony concerning the delivery of the deed of April 25, 1946. As stated previously, appellant George Ivancovich testified the deed was placed in his file by him and was never given to anyone and that Katherine Sullivan had not signed it. The respondent, Robert Sullivan, testified however, that the deed was handed to him by George some time in 1949 at the same time George handed him a type written memorandum from which Robert was to prepare an agreement to be signed by all of the respondents. The memorandum provided for monthly payments of $400 per month to Dorris under certain conditions. An agreement was prepared pursuant to the memorandum and signed by all the respondents and sent to George. He testified he refused to accept the agreement because of a clause which would permit the payments of $400 per month to Dorris to be reduced in the event rentals from the Pine and Kearney Street prop-

erty fell below $650 per month. Some time later a dispute arose between the parties and George planned to put his and Dorris' one-half interest in the property up for sale. It was at this time he discovered that the deed of April 25, 1946, had been recorded on June 2, 1952, and he thereupon commenced this quiet title action.

The trial court found that a confidential relationship existed between George and his sister Katherine. The court also found that by the deed of April 25, 1946, the grantors intended to grant Katherine Sullivan a life estate in an undivided one-half interest in the property with the remainder to her children as joint tenants, and a life estate in the other undivided one-half interest to George and Dorris Ivancovich as joint tenants with right of survivorship, and upon the death of the survivor the remainder to vest in the children of Katherine Sullivan as joint tenants. The court by its findings and judgment reformed the deed of April 25, 1946, to express the true intent of the parties and found the deed of February 24, 1947, to be of no force or effect. The court further found that the deed of April 25, 1946, was signed by all of the parties prior to its delivery to Robert Sullivan; that George delivered the deed to Robert Sullivan who took it subject to the condition that the respondents sign an agreement incorporating the terms contained in the memorandum regarding payments to Dorris Ivancovich. The court also found that the collateral agreement was prepared and signed by all of the necessary parties and delivered to appellants which fulfilled the condition which was made concomitant with manual delivery of the deed.

Appellants have not seriously questioned the authority of a court to reform a deed to correct the unilateral mistake of a grantor. ▆▆▆ Both appellants and respondents concede the original deed in the action did not express the intent of any of the parties and that the succeeding deeds were attempts to correct that error. It appears to be settled that a court does have authority to reform a deed under the circumstances. (*Tyler* v. *Larson*, 106 Cal.App.2d 317 [235 P.2d 39]; *Nunes* v. *DeFaria*, 107 Cal.App.2d 794 [238 P.2d 106].)

The appellants' principal contention is that the trial court erred in finding that the deed of April 25, 1946, was controlling. They argue that the deed was delivered conditionally and that the condition was never complied with which renders the deed legally insufficient and void. Respondents contend that the provisions expressed in the memorandum handed

Robert at the time the deed was handed to him were incorporated in a written agreement and delivered to George Ivancovich, thereby fulfilling any condition expressed at the time of the delivery. The trial judge summarized his views concerning the delivery as follows:

"I believe—and I am willing to accept the testimony as to the delivery of the joint tenancy deed which was dated April 25, 1946; I believe that it was signed by all parties prior to the delivery, long prior to the delivery, *and that it was delivered some time in the early part of 1950 when Mr. Robert Sullivan visited Mr. Ivancovich, and that he took it subject to the condition that the children would sign this agreement.* The evidence shows that the agreement which is marked Exhibit 10 and dated March blank, 1950, was signed by all of the obligatory parties. *All of the children signed it, and therefore performed their condition; and from that time on any .condition in reference to the delivery of the deed of April 25, 1946, had been fulfilled* and the deed was then available for recording." (Italics added.)

In the State of California there cannot be a conditional delivery of a deed to a grantee or his agent as contemplated by appellants, respondents and the trial court. Civil Code, section 1056, provides:

"A grant cannot be delivered to the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which delivery was made."

When conditions are expressed concurrently with the manual delivery of a deed, the grant is either absolute or void. The determination of whether the manual delivery was valid or ineffectual turns upon the question of the grantor's intent. This rule is expressed in the case of *Williams* v. *Kidd,* 170 Cal. 631-638 [151 P. 1, Ann.Cas. 1916E 703]:

"It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended thereby to divest himself of title. If he did, there was an effective delivery of the deed. If not, there was no delivery."

Thus, the question is one of fact and the rule governing a review of that question on appeal is set forth in the case of *Chaffee* v. *Sorensen,* 107 Cal.App.2d 284-288 [236 P.2d 851], wherein the court said:

"Delivery or nondelivery of a deed is a question of fact to be determined by the surrounding circumstances of the transaction and where there is substantial evidence or where an inference or presumption may be drawn from the evidence to sustain the court's finding of delivery such finding will not be interfered with on appeal."

The trial court rejected the testimony of George and found the circumstances of delivery as related by Robert Sullivan to be true. Therefore, when George handed Robert the deed and the memorandum the delivery was complete. In addition to the testimony concerning the circumstances surrounding delivery of the deed, the finding is also supported by the testimony of Robert Sullivan concerning a conversation he had with George regarding the preparation of the agreement, which conversation took place after delivery of the deed. Robert testified, "George said he had delivered the deed, Exhibit A (the deed of April 25, 1946) to me. He said, 'in case anything goes wrong you have got the deed.' " George's belief that the deed would protect Katherine's children "in case anything goes wrong" is consonant with a present valid delivery, otherwise, the deed would have been ineffectual in the event anything went wrong. It is axiomatic that this court may not pass upon the trial court's determination of the credibility of witnesses or enter upon a redetermination of the facts when there is simply a conflict in the evidence. The trial court found that George Ivancovich made a present delivery of the executed deed to Robert Sullivan upon certain express conditions later to be incorporated in an agreement. No condition was expressed in the instrument itself and therefore under Civil Code, section 1056, the oral condition was ineffective. Under such circumstances the delivery of the deed and vesting of title occurs by operation of law even though the result may be contrary to the express stipulation of the parties. This proposition of law is clearly stated in *Blackledge* v. *McIntosh*, 85 Cal.App. 475 at page 482 [259 P. 770]:

"The law is well settled, where a deed, absolute in form, is delivered by the grantor to the grantee personally, title vests in the grantee, discharged of any condition on which the delivery was made." and

"In Devlin on Deeds, section 314 it is said: 'A deed cannot be delivered to the grantee as an escrow. If it be delivered to him it becomes an operative deed, freed from any condition not expressed in the deed. It is and will vest the title in him,

although this may be contrary to the intention of the parties.' (Citations).''

(*James* v. *James*, 80 Cal.App. 185 [251 P. 666] ; *Lavely* v. *Nonemaker*, 212 Cal. 380 [298 P. 976] ; 1 So. Cal.L.Rev. 32, pp. 38-41; 9 Cal.Jur. 165, § 60.) The foregoing principle of law may appear to be harsh and in some cases it certainly is contrary to the wishes and intent of the parties. The reason for the rule appears to be the reluctance of the law to permit or encourage the conditional manual delivery of a deed to a grantee which upon its face appears valid in all respects and thus open the way for fraud and misrepresentation as well as honest misunderstanding in regard to third parties who have no knowledge of the conditions imposed *aliunde*. It is not unreasonable to require a grantor making a conditional delivery to withhold transfer of the deed to the grantee or his agent until the conditions have been complied with or if manual delivery isn't to be delayed in that event to incorporate the conditions in the body of the instrument. Actually, the rule is not as harsh as it first appears. ■ A grantor who makes what he deems to be a conditional delivery such as in this case, but which is an actual delivery under the provisions of Civil Code, section 1056, is not entirely without redress. The mere fact the condition drops out by operation of law insofar as vesting of title is concerned, does not abrogate the agreement nor render it unenforceable. The rights of grantors and grantees under such circumstances are summarized by the court in *Lavely* v. *Nonemaker*, 212 Cal. 380, 383 [198 P. 976], as follows:

''The circumstances of the case at bar are not such as to take it out of the general rule. Neither the deed nor the asserted *oral* agreement either expressly or impliedly refers to the defendant's promise to care for the plaintiff as a condition affecting the validity of the deed, and the trial court has not found that it is such a condition. True, such promise constituted the sole and only consideration for the transfer, but in this particular the situation is not unlike that where a conveyance is made solely in reliance upon the grantee's written promise to pay an agreed price, or to subsequently render certain legal services, the breach of each of which promises it has been held gives rise only to an action for damages. (*Lawrence* v. *Gayetty, supra* [78 Cal. 126 (20 P. 382, 12 Am.St.Rep. 29) ] ; *Hartman* v. *Reed*, 50 Cal. 485.) ''

The judgment is affirmed.

Dooling, Acting P. J., and Kaufman, J., concurred.