[Civ. No. 19883.   First Dist., Div. Two.   June 18, 1962.]

ANGELINA CONROTTO et al., Plaintiffs and Appellants, v. FIURI O. GAGLIASSO et al., Defendants and Respondents.

Todd & Todd, D. B. Richardson, Sr., John M. Klarich, Orvis H. Speciale and Henry C. Todd for Plaintiffs and Appellants.

Bressani & Hansen, Gerald B. Hansen and Clarence J. Shuh for Defendants and Respondents.

SHOEMAKER, J.—This is an appeal from a judgment refusing to cancel and set aside certain deeds and documents made by Margherita Gagliasso to her sons and a daughter-in-law.

The plaintiffs are Margherita's three daughters. The defendants are her three sons and a daughter-in-law.[1] The alleged ground for cancellation is that the various gifts were procured by the fraud and undue influence of these four defendants.

The record shows that on January 17, 1945, the decedent, Margherita Gagliasso, deeded substantially all of her real property to her sons John, Fiuri and Charles; on January 31, 1946, she deeded an additional one-acre parcel to her sons John and Fiuri; and that on January 12, 1953, she assigned her interest in two deeds of trust to John, Joseph, Charles, Fiuri and his wife Elvira.

The bulk of the testimony produced related to Margherita's mental capabilities at the time of the various transfers and the presence or lack of undue influence on the part of the various defendants.

Substantial evidence was presented by the parties to this litigation bearing upon these issues. It was highly conflicting. The jury returned a special verdict finding that none of the deeds or other gifts had been procured by the fraud or undue influence of the defendants. The trial court made findings in accord with the special verdict and also found that the action was barred by the statute of limitations, since Margherita herself had made no attempt to set aside the gifts prior to her death and her heirs were therefore barred. Findings of fact so made are accepted by and will not be disturbed by an appellate court. Judgment was for defendants.

Appellants first attack the trial court's ruling with respect,

---

[1]The administrators of the estates of Margherita and of a fourth son, Joseph, were named as additional defendants because they refused to join as plaintiffs.

to a 1953 will of Margherita Gagliasso. The action complained of occurred after counsel for respondents had offered Margherita's 1943, 1947, 1951, 1952 and 1953 wills into evidence, for the purpose of showing that she had intended to leave her real property to her sons even prior to 1945 and had consistently reaffirmed the 1945 deeds in her later wills. At that time, the court asked counsel for appellants if he had any objection to the introduction of the wills, and he replied that he had not. The wills were accordingly admitted into evidence, but not shown to the jurors. Thereafter, counsel for *appellants* read selections from each of the wills to the jury.

Next day at an informal conference, held in chambers, it was stipulated by counsel for both parties that the 1953 will had been denied probate on the ground that it was executed through fraud or undue influence. A discussion then ensued between court and counsel as to the propriety of allowing the will to remain in evidence. Counsel for appellants was of the opinion that it would be extremely prejudicial to appellants if the will were allowed to remain in evidence and appellants were denied the opportunity to show that a jury had found it to be invalid and the result of undue influence. Counsel for respondents also urged its prejudicial effect on his case if permitted to remain in evidence, and suggested that the will be withdrawn from evidence and the jury admonished to disregard it. The trial judge thereafter ordered the 1953 will stricken from the record and instructed the jury it was not to be considered by them.

■■ Appellants contend that the court was without power to exclude from evidence a document which both parties had agreed to admit into evidence, and further assert that they had the right to show that the will had been held invalid in a previous proceeding.

Appellants' position is without merit. When respondents originally offered the 1953 will into evidence, appellants were fully aware of its invalidity. Had they chosen to object to its introduction at that time, the will would have been excluded from evidence and the jury would never have known any of its contents, and it is extremely unlikely that any prejudice would have resulted to either party. However, counsel for appellants chose to make no objection to the introduction of the will and shortly thereafter proceeded to read portions of the will to the jury, thus apprising them of the fact that the will reaffirmed the gifts to respondents and was generally un-

favorable to appellants. It would appear that it was counsel for appellants' intent to inform the jury that the will was intimately connected with the issues before them and to disclose that it was subsequently found, through court action, to be invalid because of respondents' undue influence.

Until the conference in chambers, the trial court knew nothing of the invalidity of the will which it had already admitted into evidence. The problem before it was to decide upon the proper method by which it could remove this evidence from the consideration of the jury without causing undue prejudice to either side. Both parties were clearly in agreement that the will could not remain in evidence and be considered as competent evidence favorable to respondents. The trial judge concluded that it would be equally disastrous to allow appellants to show that a will, which they had already established as closely connected with respondents, had been found to be the product of undue influence. Appellants cannot now contend that this ruling constituted error. A wide discretion is left to the trial judge in determining the relevancy and admissibility of evidence. (*Mercado* v. *Hoefler* (1961) 190 Cal.App.2d 12, 19 [11 Cal.Rptr. 787]; *Roberts* v. *Permanente Corp.* (1961) 188 Cal.App.2d 526, 533 [10 Cal. Rptr. 519].) ▆▆▆ The general principle of admissibility of relevant evidence is subject to a number of exceptions, based upon counterbalancing factors such as undue prejudice, confusion of issues, and undue consumption of time. (See Witkin, California Evidence, § 112, p. 134.) The existence of undue influence in connection with a 1953 transaction might have little real bearing upon deeds executed as much as eight years prior to that time. Yet, no one with trial experience would deny that severe prejudice to respondents' cause would result were the jury to be apprised of the prior finding of undue influence. Furthermore, any impression unfavorable to appellants which the jurors might have gained from the 1953 will was entirely due to the acts of counsel for appellants, who elected not to object to the will and who read it into evidence himself. We are content that appellants have not shown that they were in any way prejudiced by the trial court's ruling, which was eminently fair and proper.

Appellants next assert that the evidence conclusively establishes that there was no delivery of the 1945 deeds; they rely upon statements contained in the deposition of Margherita's attorney, Mr. Bressani, to the effect that he retained the deeds after they were executed on January 17, 1945, and did

not record them until the following May; and that he thereafter delivered them to the grantees himself. Appellants say that the delivery of the deeds by Margherita to Mr. Bressani did not constitute a delivery to the grantees and that, to the contrary, it had been Margherita's intent that her attorney retain the deeds and make delivery only upon her death. This theory finds its only support in Bressani's deposition. Appellants neglect to point out that both Fiuri and John Gagliasso testified that their mother had called them into Mr. Bressani's office shortly after the deeds were executed and handed each of them their deeds. John testified that Margherita had told the grantees that she was taking them down to Mr. Bressani's office and that she was giving them the deeds to the ranch. When they reached the office, Margherita got the deeds from Mr. Bressani and handed them to each grantee, instructing them to give them back to Bressani in order that they could be recorded. Fiuri testified that he was certain that his mother rather than her attorney had handed out the deeds. He also stated that she had told the grantees, after passing out the deeds, that they could do what they wanted with the property. It may also be noted that the testimony of John and Fiuri is not necessarily in conflict with Mr. Bressani's deposition, since he there stated that he was not entirely certain that he had retained the deeds in his possession until after they were recorded. He stated that he had no specific recollection but that in all probability he did.

In any event, this conflict in the evidence was properly resolved by the jury which found, in reply to specific interrogatories, that there was a valid delivery of the 1945 deeds. The question of whether a delivery is valid or invalid is one of fact. If the grantor parts with a conveyance, intending thereby to divest himself of title, he has made an effective delivery. (*Williams* v. *Kidd* (1915) 170 Cal. 631, 638-639 [151 P. 1, Ann.Cas. 1916E 703] ; *Ivancovich* v. *Sullivan* (1957) 149 Cal.App.2d 160, 164-165 [307 P.2d 989].) In the case at bar, there was ample evidence in support of such a finding.

Appellants next contend that the evidence reveals a scheme on the part of respondents to pervert the will of Margherita. Appellants assert that John and Fiuri Gagliasso occupied a confidential relationship to their mother, and that the burden was therefore upon respondents to demonstrate that they had made a full and complete disclosure to Margherita and that she had been given an opportunity to seek independent advice,

Appellants rely primarily upon the evidence that Margherita was of an advanced age at the time that she made the various gifts, and that John and Fiuri Gagliasso had operated her ranch for her ever since the death of their brother Michael, and had never rendered their mother a detailed accounting of the profits. Appellants stress the fact that Margherita lived with Fiuri and his wife during the last years of her life and was dependent upon them for care. Appellants also point to the testimony indicating that Margherita was greatly affected by the death of her son Michael, and was thereafter considerably weakened, both mentally and physically.

■ The evidence favorable to respondents, however, presents an entirely different picture of the mental and physical abilities of Margherita and of the relationship between her and her sons and daughter-in-law. There was testimony that Margherita, at the time that she executed the 1945 deeds, was the ''matriarch of the family,'' that she was the ''boss,'' and that ''no one could tell her what to do.'' One of her sons testified that prior to the execution of the deeds in 1945, Margherita had always handled the profits from the ranch and had divided it among her sons as she saw fit. There was also evidence that Margherita had always intended to leave her real property to her sons because they had stayed on the ranch and worked, and her daughters had married and gone to live elsewhere. Margherita's state of mind as to the disposition of her property is shown in a 1946 letter to her daughter Angelina, wherein she wrote, ''My sons have been always living with me, and they are always working. Whatever they earn, they earn it with their own work, and all the neighbors can testify to that. . . . Now you pretend to have the share as your brothers. This looks like unjust.'' In June of 1954, shortly before her death, her doctor testified that she appeared to be perfectly competent and understood what was going on around her. There was also evidence that Margherita had never consulted her sons or daughter-in-law in connection with the various gifts which she made. The 1945 deeds were executed in the presence of her attorney and her cousin Chiopin, whom she had asked to drive her to the office. Her sons were never informed of this transaction until she asked them to come to Bressani's office and get their deeds. Even as late as 1953, Margherita continued to conduct her business affairs without prior consultation with respondents. Her son John testified that he, Fiuri, and Elvira, were never aware of

the 1953 deed of trust assignment until Margherita told them to go down to Mr. Bressani's office and get their money.

The evidence supports the jury's findings and that of the court that respondents were guilty of no actionable wrong in connection with Margherita's various gifts. It therefore becomes unnecessary to determine whether appellants' action is barred by the statute of limitations.

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied July 9, 1962, and appellants' petition for a hearing by the Supreme Court was denied August 16, 1962. Dooling, J.,* participated in place of White, J. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.