Filed 12/26/25  Turner v. BBV Profit Sharing Plan CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

<table>
<tr><td>

BERNICE TURNER,

     Plaintiff and Appellant,

v.

BBV PROFIT SHARING PLAN,

     Defendant and Respondent.

</td><td>

A168874

(San Mateo County
Super. Ct. No. 17CV01474)

</td></tr>
</table>

Appellant Bernice Turner owns a 50 percent interest in real property located in East Palo Alto (the "Property").  She granted her brother, Michael Turner,[1] the other 50 percent interest in the Property.  Thereafter, without Bernice's knowledge, Michael obtained a loan from respondent BBV Profit Sharing Plan (BBV) that encumbered his Property interest.

Bernice sued BBV for fraud and negligence, claiming that BBV conspired with Michael to illegally encumber the Property.  She further alleged that BBV owed her a duty to disclose the loan because it acted as a broker in the loan transaction and its agents, William Stuart and Zoe Hamilton, had previously assisted Bernice in taking out a loan.  The trial court granted BBV summary judgment on both causes of action.  Bernice

---

[1] As Bernice and Michael share the same last name, we shall refer to them by their first names in the interest of convenience and clarity only.  We intend no disrespect.

appeals, arguing that she established triable issues of fact as to her claims. We affirm.[2]

## I. BACKGROUND[3]

### A. Factual Background

In 2013, Bernice acquired title to the Property. The Property was subject to a first deed of trust. To pay off the first deed of trust, Bernice obtained a loan from Milestone Financial, LLC (Milestone), a private lender. Hamilton worked for Milestone at that time, and she was the person who dealt with Bernice's loan brokers. Stuart was the manager of Milestone.

The following year, Bernice granted Michael a 50 percent interest in the Property. The grant deed stated that she was transferring to Michael an

---

[2] While we sympathize with Bernice's situation, we must affirm the judgment because she has not shown that the trial court erred in granting BBV's summary judgment motion or in denying her motion to vacate the judgment or for a new trial.

[3] On March 3, 2025, Bernice filed a motion to consolidate this appeal with the appeal in *Turner v. BBV Profit Sharing Plan* et al., case No. A170257, for purposes of oral argument, or, in the alterative, to assign both appeals to the same appellate panel "to promote judicial efficiency and ensure consistent consideration of the overlapping factual and legal issues." We agree that argument should be calendared for the same date and the appeals assigned to the same panel, and we will issue the opinions simultaneously to ensure a uniform and consistent decision. However, we deny the motion to consolidate because the appeals do not involve common issues. (See *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 165, fn. 3.) One appeal is from an order granting summary judgment in an action challenging BBV's conduct in making the loan for Michael, while the other appeal is from an order sustaining a demurrer to a cross-complaint challenging the subsequent foreclosure. (See *Sampson v. Sapoznik* (1953) 117 Cal.App.2d 607, 609 [denying motion to consolidate appeal from judgment with appeal from an order granting a motion to correct the judgment because "the question as to whether the trial court exceeded its jurisdiction or abused its discretion has [no] relation to the issues to be raised in attack or defense of the judgment on appeal"].)

2

undivided 50 percent interest in the Property as a gift. Shortly thereafter, Bernice and Michael executed a deed of trust for a loan, secured by the Property, which was used to pay off the loan from Milestone.

In 2017, Michael obtained a loan from BBV, which is a 401K deferred compensation retirement plan. Stuart and his wife own the company that sponsors the plan. The loan encumbered only Michael's 50 percent interest in the Property. Bernice learned about the loan soon after the deed of trust was recorded.

In 2019, BBV assigned the note for Michael's loan to MERS Link 4, doing business as Milestone.

Michael subsequently defaulted on the payments owed on the note, and MERS Link 4 initiated foreclosure proceedings on the deed of trust. Michael's 50 percent interest in the Property was purchased by third parties at the foreclosure sale in August 2022.

### B. Procedural Background

Bernice initiated this action in April 2017, before Michael took out the loan from BBV. Bernice sought rescission of her transfer of a 50 percent interest in the Property to Michael based on fraud, negligent misrepresentation, and mutual mistake.

Bernice amended her complaint in November 2020 to add BBV as a defendant. Her operative second amended complaint asserted two causes of action against BBV for fraud and negligence. In her fraud cause of action, Bernice alleged that BBV conspired with Michael to illegally encumber the Property in violation of the Employee Retirement Income Security Act (ERISA; 29 U.S.C. § 1001 et seq.) and an agreement Bernice had with Michael. She further claimed BBV acted as a broker in the loan transaction and therefore owed her a duty of disclosure, and that BBV "broke virtually

3

every rule applicable to brokers." She alleged that BBV's agents, Hamilton and Stuart, had contracted with Bernice previously and knew she did not want to take out another loan on the Property.

In her negligence cause of action, Bernice alleged that BBV was negligent in signing the deed of trust for Michael's loan because Stuart and Hamilton knew that Bernice did not want to take out another loan and that her signature was required for the loan documents. Bernice further alleged that BBV had a duty "not to assign away its interest" in the deed of trust when it learned of this litigation.

BBV filed a motion for summary judgment and/or summary adjudication. For Bernice's fraud claim, BBV argued that it did not fail to disclose any fact to Bernice that it had a legal duty to disclose. In making the loan, BBV was entitled to rely on the unconditional grant deed conveying to Michael a 50 percent interest in the Property, and the loan encumbered only Michael's interest in the Property. BBV further argued that it did not act as a broker when it loaned money to Michael, nor did it violate ERISA in loaning him money. For Bernice's negligence cause of action, BBV argued that it did not owe Bernice a duty of care. BBV also asserted that both causes of action were barred by the applicable statute of limitations. BBV's motion was supported by the declarations of Stuart and Hamilton and the relevant deeds and loan documents.

Bernice opposed the summary judgment motion. She asserted the loan was illegal and BBV owed her a duty to disclose because it acted as a broker in the loan transaction. She further argued that BBV owed her a duty of care because it was the alter ego of Milestone, which had previously loaned her money, and BBV had a "continuing fiduciary duty" to Bernice. Finally, she argued that the applicable statute of limitations was tolled by California

4

Rules of Court COVID-19 Emergency Rule 9(a). Bernice's opposition was supported by her declaration and the declaration of a fraud investigator and mortgage lending expert.

The trial court granted the motion. Based on the undisputed facts, the court concluded that BBV was entitled to rely on the recorded title in making the loan because Michael was free to encumber his interest in the Property without Bernice's knowledge and consent, and Bernice never recorded a lis pendens. The court further concluded that Bernice failed to offer admissible evidence of collusion or evidence showing that BBV was her broker or the alter ego of Milestone, nor did she cite to any ERISA provision that would preclude BBV from making a loan to a third party. The court found that Bernice improperly asserted new theories of liability in her opposition to the motion, including that BBV negligently failed to conduct proper due diligence before classifying the loan as "commercial" and that it violated Department of Real Estate rules and regulations. It did not reach the statute of limitations issue.

After the trial court entered judgment in favor of BBV, Bernice filed a motion to vacate the judgment or for a new trial, which the court denied. This appeal followed.

## I. DISCUSSION

### A. Bernice's Challenges to the Trial Court's Procedural Rulings.

#### 1. The Court Did Not Abuse Its Discretion in Denying a Continuance.

Bernice contends the trial court erred in denying her request for a continuance to allow her to complete the deposition of Hamilton. The court

5

based its ruling on Bernice's failure to make the showing required by Code of Civil Procedure[4] section 437c, subdivision (h).

Section 437c, subdivision (h) allows for continuance of a motion for summary judgment hearing if it appears from affidavits in opposition to the motion that "facts essential to justify opposition may exist but cannot, for reasons stated, be presented."  The affidavits "must show: '(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts.' "  (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254.) Continuance requests under section 437c, subdivision (h) are to be liberally granted, and are "virtually mandated ' "upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion." ' "  (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395, disagreed with on other grounds in *Cooksey v. Alexakis*, *supra*, 123 Cal.App.4th at pp. 256–257.)  A continuance is not required, however, when the submitted affidavit fails to make the necessary showing.  (*Cooksey*, at p. 254.)

Here, an affidavit was not submitted, and the record fails to establish that the trial court abused its discretion in denying a continuance of a summary judgment hearing.  Bernice did not demonstrate with any specificity that " 'facts essential to justify opposition may exist.' "  (*Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 548.)  She stated in her opposition that "crucial evidence remains outstanding, specifically the conclusion of the deposition of Zoe Hamilton."  Hamilton had already been deposed at the time Bernice filed her opposition, and Hamilton's deposition had been continued for an additional "partial" day.  As the trial court noted, Bernice did not

---

[4] Undesignated statutory references are to the Code of Civil Procedure.

6

specify what additional information she sought from Hamilton that she was unable to obtain in the first deposition session. Thus, we conclude the trial court did not abuse its discretion in denying Bernice's request to continue the summary judgment hearing.

### 2. *The Court Did Not Abuse Its Discretion in Excluding the Supplemental Declaration of Bernice's Expert.*

Bernice argues that the trial court abused its discretion in excluding the supplemental declaration of Bernice's fraud investigator and mortgage lending expert, Curtis Novy. The trial court did so on the ground that Novy's supplemental declaration was untimely and concerned issues outside the scope of the SAC. We conclude the trial court did not abuse its discretion in disregarding Novy's supplemental declaration.

"A trial court has broad discretion under rule 3.1300(d) of the [California] Rules of Court to refuse to consider papers served and filed beyond the deadline without a prior court order finding good cause for late submission." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765; accord, *Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 322.) In the summary judgment context, a trial court does not abuse its discretion in excluding the opposing party's late-filed declarations. (*Mackey v. Board of Trustees of California State University* (2019) 31 Cal.App.5th 640, 657, disagreed with on other grounds in *Harris v. Thomas Dee Engineering Co., Inc.* (2021) 68 Cal.App.5th 594, 604, fn. 8.)

Here, Bernice was required to file her opposing papers with the court at least 20 days before the June 27, 2023 hearing date. (§ 437c, subd. (b)(2).) She filed Novy's supplemental declaration approximately a week before the hearing. Thus, Novy's supplemental declaration was untimely. There does not appear to be a prior court order finding good cause for the late

7

submission, so the trial court did not abuse its discretion in excluding the late-filed Novy declaration. (See *Mackey v. Board of Trustees of California State University*, *supra*, 31 Cal.App.5th at p. 657.)

Further, we agree with the trial court that Novy's supplemental declaration addressed issues beyond the scope of the pleadings. It is well established that " '[t]he pleadings delimit the issues to be considered on a motion for summary judgment. [Citation.]' [Citation.] Thus, a 'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' [Citation.] 'To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. [Citation.] If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion.' " (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.)

Novy's supplemental declaration was relevant only to Bernice's argument that BBV violated its obligations as a lender by misclassifying the loan as "commercial." The SAC says nothing about BBV's obligations as a lender, however. Relying on *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, Bernice argues that the pleadings "should be construed broadly to encompass all relevant factual issues that support the plaintiff's claims." But even the liberal framework established in *Nakashima* requires that the pleading at issue give notice to the other party of the theory asserted. (*Id.* at p. 385; see, e.g., *Danieley v. Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 119–120 [complaint alleged owner negligently

8

maintained ski slopes; plaintiff could not avoid summary judgment by showing owner negligently cared for her after the accident].)

Here, the SAC did not give even minimal notice that Bernice was asserting any claim that BBV violated its duties as a lender by misclassifying the loan it issued to Michael. For the fraud cause of action, the SAC alleged that BBV violated Bernice and Michael's agreement, ERISA rules, a cease-and-desist order disqualifying BBV and Stuart from acting as a broker, and "virtually every rule applicable to *brokers*." (Italics added.) Regarding BBV's alleged negligence, the SAC alleged that BBV had a duty "not to assign away its interest in the DOT" and a duty to inform Bernice of the loan because of Bernice's past experience with Stuart and Hamilton. The SAC simply does not allege that BBV violated its duties as a lender by misclassifying the loan.

For that reason, we do not agree that the trial court abused its discretion in disregarding the supplemental Novy declaration in connection with the motion for a new trial, and we will not consider any arguments on appeal related to the theory that BBV misclassified the loan.

### 3. *Bernice's Remaining Contentions Lack Merit.*

Bernice argues that the trial court abused its discretion in denying her request for judicial notice of Department of Real Estate licensing information for Stuart and Bear Bruin Ventures Inc., an alleged alter ego of BBV and Milestone, and of documents related to disciplinary proceedings against Stuart, Stuart's wife, Hamilton, Milestone, and Bear Bruin Ventures, Inc. The trial court denied the request for judicial notice because the request did not contain argument or citation to authority. " '[T]he decision of the judge not to take judicial notice will be upheld on appeal unless the reviewing court determines that the party furnished information to the judge that was so persuasive that no reasonable judge would have refused to take judicial

9

notice of the matter.' " (*Willis v. State of California* (1994) 22 Cal.App.4th 287, 291, citing Evid. Code, § 453.) In her request for judicial notice, Bernice did not cite any legal authority to support her request or otherwise explained how any of the documents were matters subject to judicial notice under the Evidence Code. Thus, she did not carry her burden to provide the trial court with sufficient information to allow it to take judicial notice.

Even if the trial court abused its discretion in denying Bernice's request for judicial notice, the error was harmless. The documents for which Bernice was requesting judicial notice were relevant to her argument that BBV and Stuart had a history of engaging in "illegal lending practices" and violating Department of Real Estate regulations and licensing laws. However, the only documents for which she requested judicial notice that she ties to her claims are cease-and-desist orders issued by the Bureau of Real Estate. Those same cease-and-desist orders are attached to Novy's declaration. Moreover, the cease-and-desist orders do not involve BBV, and, as we will explain, Bernice has not established a triable issue of material fact regarding whether BBV was the alter ego of the entities and individuals subject to the orders. Thus, the documents for which Bernice requested judicial notice would not have changed the outcome.

Bernice also argues that the trial court abused its discretion in many of its rulings on the parties' evidentiary objections. While she identifies the evidentiary objections at issue and the court's reasons for sustaining or overruling the objections, she does not explain why the court's rulings were erroneous. " 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.) Bernice has failed to meet this requirement

10

here, and thus we affirm the trial court's evidentiary rulings. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [plaintiffs forfeited challenge to evidentiary rulings where they made "no attempt to demonstrate how each evidentiary ruling was erroneous"].)

## B. Legal Standards Governing Summary Judgment

A summary judgment motion " ' "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ' " (*Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 755.) A defendant moving for summary judgment must present evidence that either "conclusively negate[s] an element of the plaintiff's cause of action" or "show[s] that the plaintiff does not possess, and cannot reasonably obtain," evidence needed to establish at least one element of the claim. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853–854.) If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).)

The pleadings establish "the outer measure of materiality in summary judgment proceedings." (*FPI Development, Inc. v. Nakashima, supra*, 231 Cal.App.3d at p. 381.) " 'The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute.' " (*Ibid.*) "Accordingly, the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.)

11

"We review the record de novo, 'liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' " (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 832.)  However, the scope of our de novo review is limited to issues that have been adequately raised and supported by authority and record citations.  (See *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 978–979.)

## C. Bernice Failed to Raise a Triable Issue Precluding Summary Judgment on Her Fraudulent Concealment Claim.

The gist of Bernice's fraud claim is that BBV did not disclose to her its intent to fund a loan for Michael that would encumber the Property.  We agree with BBV that Bernice failed to show a triable issue of material fact exists regarding whether BBV owed her a duty to disclose.

The elements for fraud based on concealment are concealment or suppression of material fact; the defendant must have been under a duty to disclose the fact to the plaintiff; the defendant must have intentionally concealed or suppressed the fact with intent to defraud; the plaintiff must have been unaware of the fact and would not have acted as he did had he known of the concealment; and damages.  (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870.)

Liability for concealment is imposed where the defendant is in a fiduciary or other confidential relationship that imposes a duty of disclosure. (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 859.)  Where there is no fiduciary relationship, "the duty to disclose generally presupposes a relationship grounded in 'some sort of *transaction* between the parties.  [Citations.]  Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and

prospective employee, doctor and patient, or parties entering into any kind of contractual agreement.' " (*Ibid.*, quoting *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 337.)

Bernice alleged the following facts in connection with the issue of whether BBV had a duty to disclose to Bernice its intent to issue a loan to Michael: (1) BBV knew that Bernice and Michael "had acted as 'joint tenants' requiring each to agree before action could be taken to encumber the property"; (2) BBV's agents, Stuart and Hamilton, knew that Bernice did not want to take out another loan; and (3) BBV, "[a]s a broker," had "a duty of disclosure to Plaintiff, whom Will [Stuart] and Zoe [Hamilton] had contracted with in the past."

We conclude, and Bernice does not dispute, that BBV made a prima facie showing negating the duty to disclose element based on the grant deed. As BBV argued in its motion for summary judgment, any condition imposed on the transfer of real property that is not reflected in the deed will be disregarded upon execution and delivery of the deed to the grantee, "and the grantee receives title free and clear of the condition." (*McMillin v. Eare* (2021) 70 Cal.App.5th 893, 914–915, citing Civ. Code, § 1056; see *Ivancovich v. Sullivan* (1957) 149 Cal.App.2d 160, 165; *Security-First Nat. Bank of Los Angeles v. Leatart* (1946) 75 Cal.App.2d 211, 215 [legal effect of a deed delivered to a grantee "cannot be defeated by parole evidence of an intention on the part of a grantor that it would have an effect different from that apparent on its face"].) Moreover, a joint tenant has the right to sell or encumber his or her interest without the knowledge or consent of other joint tenants. (*Meyer v. Wall* (1969) 270 Cal.App.2d 24, 30; see *Estate of Propst* (1990) 50 Cal.3d 448, 456; *Wilk v. Vencill* (1947) 30 Cal.2d 104, 108–109

13

["One joint tenant may dispose of his interest without the consent of the other."].)

Applying these principles here, Bernice's decision to not take out another loan and any agreement she had with Michael regarding his right to encumber his interest in the Property did not alter the legal effect of the grant deed, which conveyed to Michael a 50 percent interest in the Property without conditions. The deed was executed by the parties and recorded years before Michael took out the loan. Recordation of the deed constituted prima facie evidence of delivery of the deed. (Evid. Code, § 1600, subd. (a); *Butler v. Butler* (1961) 188 Cal.App.2d 228, 233.) Additionally, it is undisputed that the loan encumbered only Michael's interest in the Property. It is also undisputed that before BBV funded the loan, Bernice did not record a lis pendens, which would have indicated that there was a dispute over ownership of the Property. Under these circumstances, BBV was entitled to make a loan to Michael that encumbered his interest in the Property without Bernice's consent or knowledge. Bernice may have been able to seek damages from Michael for his breach of their separate agreement (see *McMillin v. Eare*, *supra*, 70 Cal.App.5th at p. 915), but title in a 50 percent interest in the Property vested in Michael without conditions.

Moreover, BBV met its initial burden of negating the duty to disclose element based on Stuart's declaration, which established that BBV did not act as a broker in the loan transaction or otherwise have any relationship with Bernice.

Thus, BBV made a prima facie showing that it did not owe Bernice a duty to disclose its intent to make a loan to Michael based on any past or present relationship with Bernice.

Bernice presents three arguments for why she created a triable issue of fact on the duty to disclose element, all of which lack merit. First, Bernice argues that BBV owed her a duty based on the factors established in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650. The *Biakanja* factors, however, are used to determine whether a defendant has a duty to exercise due care to avoid negligently injuring a plaintiff not in privity with the defendant. (*Id.* at p. 648; see *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 937 ["we have repeatedly stated that [*Biakanja*'s] factors are used to determine whether persons must exercise reasonable care to avoid negligently causing economic loss to others with whom they were not in privity"].) This is an inquiry distinct from whether a defendant has a duty to disclose material facts, the latter of which presupposes a fiduciary relationship or "a relationship grounded in 'some sort of *transaction* between the parties.' " (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, *supra*, 157 Cal.App.4th at p. 859.)

Even if the *Biakanja* factors applied in the fraudulent concealment context, Bernice presents no citations to the record or authority in support of her argument that each of the factors weigh in favor of imposing a duty to disclose on BBV. Moreover, her reasoning is often contrary to the law regarding the rights of co-owners. For example, she argues that BBV's conduct carries "significant moral blame" in part because the loan disregarded her ownership interest. As discussed above, however, Michael was entitled to encumber his interest in the Property, and the loan encumbered only Michael's separate interest.

Second, Bernice argues that BBV is liable for fraud as the alter ego of Stuart. She reasons that "once the veil is pierced," Stuart was the "de facto broker for both" the 2013 loan transaction between Bernice and Milestone

15

and the 2017 loan transaction between BBV and Michael. It seems that Bernice is claiming BBV owed her a continuing duty to disclose as the alter ego of Stuart.

Assuming without deciding that a broker may owe a past client a continuing duty to disclose, there are at least two fatal issues with Bernice's argument. First, Bernice has not shown that a triable issue of material fact exists regarding whether Stuart acted as a broker in both of the loan transactions at issue. She concludes, without any citation to the record, that Stuart should be held to the "same legal and ethical standards as a licensed broker" because he "functioned as a de facto broker by negotiating the terms of both loans, dealing with lenders, and controlling the financial arrangements." Our review of Bernice and Novy's declarations does not reveal any evidence to support her conclusion. At most, Stuart stated in his deposition that "[w]e" negotiated a loan for Bernice on "our own behalf," but there is nothing indicating that he or BBV negotiated the terms of Michael's loan.

We also agree with the trial court that Bernice's alter ego argument lacks evidentiary support. The two basic requirements for piercing the corporate veil are " ' "(1) that there be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." ' " (*Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 511.) In this case, the trial court concluded that the only evidence Bernice offered to demonstrate that BBV, Milestone, and Stuart were alter egos was Stuart's ownership and control of BBV and Milestone. "Mere ownership of all the stock and control and management of a corporation by one or two individuals is not of itself sufficient to cause the

16

courts to disregard the corporate entity." (*Meadows v. Emett & Chandler* (1950) 99 Cal.App.2d 496, 499.)

On appeal, Bernice points to the exhibits attached to Novy's declaration as support for her conclusion that the veil was pierced. However, Bernice does not cite to specific portions of the exhibits, which are comprised of nearly 150 pages. It is the appellant's "duty to point out portions of the record that support the position taken on appeal. The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.) In another part of her brief, Bernice claims Novy opined that BBV was the alter ego of Stuart and the "BBV entities." While Novy concluded that BBV was the alter ego of Milestone and Bear Bruin Ventures, Inc., he presented no facts, reasoning, or evidence to support his conclusion. This was insufficient to raise a triable issue of fact. (See *Bay Area Rapid Transit Dist. v. Superior Court* (1996) 46 Cal.App.4th 476, 482 ["The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed."].) Accordingly, we find there is no evidentiary support for Bernice's alter ego argument.[5]

Finally, Bernice cites *Shaw v. Santa Monica Bank* (D.Haw. 1996) 920 F.Supp. 1080 for the rule that "no fiduciary relationship can exist between a lender and a third party unless special facts exist which give rise to such a duty." (*Id.* at p. 1087.) She argues that special facts existed in this case that created a duty to disclose on the part of BBV based on a cease-and-desist order issued by the Bureau of Real Estate. However, the only cease-and-

---

[5]Similarly, we find no evidentiary support for Bernice's conclusory argument that she "established aiding and abetting at oral argument, using an alter ego theory." And we need not consider Bernice's extensive discussion of Bear Bruin Ventures, Inc., Milestone, Stuart, and Hamilton's history of misconduct or its relevance to her claims.

desist orders we see in the record were issued against Milestone, Stuart, and other individuals and entities. As discussed above, Bernice has not shown that she created a triable issue regarding whether BBV is the alter ego of any entity or individual. Nor does she explain why BBV was liable "based on the agency relationship between it and the BBV entities," which requires a showing that BBV was acting on the behalf of another entity and that BBV was acting within the scope of its agency when it issued the loan to Michael. (See CACI No. 3701; *Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 85.)

The authorities Bernice relies on here are distinguishable. (See *Souci v. William C. Smith & Co.* (D.C.Ct.App. 2000) 763 A.2d 96, 97–98 [contractor repairing damaged apartment owed a duty of care to the tenant in that unit]; *Whitley v. Taylor Bean & Whitacker Mortg. Corp.* (N.D.Ill. 2009) 607 F.Supp.2d 885, 894–895 [husband had standing to assert claims against real estate brokers and lenders because he participated in the loan transaction, signed mortgage instruments, and held title with wife as tenant by entirety].)

As Bernice presents no other basis from which we can conclude that she created a triable issue of material fact regarding the duty to disclose element of her fraudulent concealment claim, we affirm the grant of summary adjudication as to that claim.

## D. Bernice Failed to Create a Triable Issue that BBV Conspired with Michael to Illegally Encumber the Property.

Bernice also argues that BBV conspired with Michael to illegally encumber the Property, resulting in damage to Bernice. It is unclear whether she intended her conspiracy allegations to constitute a standalone claim. The conspiracy allegations appear in the SAC's first cause of action for fraud, yet at some points in her appellate brief, Bernice appears to treat her

18

conspiracy allegations as a claim distinct from her fraudulent concealment claim. We may disregard the claim's label and determine the actual nature of the pleadings from its allegations. (See *Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1020 ["We, like the trial court, are required to look past the pleading's label and examine its substance."].) Doing so here, we conclude that Bernice has not established a basis for reversal of the summary judgment based on her conspiracy allegations.

" ' "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." ' " (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511.) A conspiracy need not be based on tort principles. "It is sufficient that a conspiracy is based on an agreement to engage in unlawful conduct regardless of whether the conspiracy violates a duty imposed by tort law or a statute." (*Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1158; see also *Cellular Plus, Inc. v. Superior Court* (1993) 14 Cal.App.4th 1224, 1236–1238.) A defendant is not liable under a conspiracy theory absent the commission of an actual tort or illegal act. (See *Applied Equipment Corp.*, at p. 511.)

Here, the SAC alleged that BBV and Michael had a "common plan" to "illegally encumber [Bernice's] home in violation of the parties' (Michael and Bernice) agreement and in violation of ERISA rules."[6]

---

[6] To the extent Bernice's conspiracy claim is also based on the allegation that BBV broke rules applicable to brokers, we reject that claim. As previously discussed, BBV met its burden to show that it never acted as a broker, and Bernice has not shown that triable issues of fact exist regarding whether Stuart or BBV acted as a broker in the loan transaction or whether BBV was the alter ego of any entity or individual subject to the Bureau of Real Estate's cease-and-desist orders.

19

We agree with the trial court that BBV made a prima facie showing that Bernice's conspiracy allegations lacked merit. As discussed above, BBV showed that Michael had the right to encumber his interest in the Property, and that it was entitled to rely on the unconditional grant deed in making a loan that encumbered Michael's separate interest. BBV also presented evidence that it was unaware of any agreement between Michael and Bernice. Finally, BBV presented evidence showing that it was not governed by ERISA because Stuart and his wife were the only participants and beneficiaries of the BBV Profit Sharing Plan and the only owners of the company that sponsored the profit sharing plan. "[A] plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA." (*Kennedy v. Allied Mut. Ins. Co.* (9th Cir. 1991) 952 F.2d 262, 264; see *Sipma v. Massachusetts Cas. Ins. Co.* (2001) 256 F.3d 1006, 1011.) Even if BBV was governed by ERISA, BBV argued, and the trial court agreed, that ERISA did not prohibit BBV from making a loan to a third party.

We further conclude that Bernice has not established that a triable issue of material fact exists regarding the alleged conspiracy. First, with respect to the alleged agreement between Michael and Bernice, Bernice makes conclusory arguments that the trial court should have rejected BBV's argument that it was unaware of the agreement and that BBV made "a deliberate effort to sidestep" the agreement. The only authority she cites here is the "Biajanka factors," but she does not articulate how those factors support her argument or provide any record citations. Nor does she address BBV's prima facie showing that title in a 50 percent interest in the Property vested in Michael free of any conditions. Thus, even if BBV was aware of Michael and Bernice's agreement, we have no reason to conclude that BBV

20

was required to abide by the agreement in making a loan to Michael that encumbered only his interest in the Property.

Regarding her ERISA allegations, Bernice contends BBV violated ERISA by "arranging a loan using ERISA covered assets in violation of fiduciary duties." She argues that the fiduciary duties BBV violated were the duties to not engage in self-dealing and "imprudent lending." We need not address this argument since Bernice has not shown that ERISA even applies here despite BBV's evidence that it is not governed by ERISA.[7]

In any event, her ERISA argument is unsupported by citations to the record or legal analysis explaining how making a loan to a third party constituted imprudent lending or self-dealing. She cites title 29 of the United States Code section 1104 but presents no argument that BBV violated that statute. She also cites title 29 of the United States Code section 1106(b)(3), arguing that BBV improperly used "ERISA-covered funds" to "secure an

_____

[7] The trial court did not expressly cite this ground as a reason for granting BBV's motion for summary judgment. Although we may affirm an order granting summary judgment on any ground supported by the record (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140), section 437c, subdivision (m)(2) requires a reviewing court to afford the parties an opportunity to present their views on the issue by submitting supplemental briefs. The purpose of this subdivision is "fully met" and supplemental briefing is not required where "the parties have already been provided 'an opportunity to present their views on the issue,' " including where "[d]efendants directly addressed the issue in their briefs, and plaintiffs addressed it in their reply brief." (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39; accord, *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147 [concluding supplemental briefing not required pursuant to § 437c, subd. (m)(2) where issue was raised below and on appeal].) Here, BBV argued in the trial court and in its response brief on appeal that ERISA does not apply in this case. Bernice had an opportunity to file a reply brief presenting her views on the issue but chose not to do so. Thus, we conclude that the requirements of section 437c, subdivision (m)(2) have been satisfied as to this alternative ground.

21

illegal loan." That statute prohibits a fiduciary with respect to an ERISA-covered plan from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving assets of the plan." (29 U.S.C. § 1106(b)(3).) Bernice identifies BBV and Stuart as the fiduciaries but does not claim that they received consideration for their personal accounts. Nor does she provide any record citations to support her suggestion that BBV was using "ERISA-covered funds" in making the loan. We therefore reject her claim that she presented evidence showing that BBV violated ERISA in making the loan. (See *Kim v. Sumitomo Bank, supra*, 17 Cal.App.4th at p. 979 [conclusory averments without legal argument or citation to the record disregarded on appeal].)

In sum, the trial court correctly ruled BBV carried its burden to present evidence that in making the loan for Michael, it did not violate ERISA or any agreement between Michael and Bernice, and Bernice presented no evidence in opposition that raised a triable issue of fact as to the illegality of the loan.

## E. Bernice Has Failed to Show the Trial Court Erred in Granting Summary Judgment on Her Negligence Claim.

Bernice contends she created a triable issue of material fact regarding whether BBV's violations of ERISA and consumer protection laws constituted negligence per se. BBV responds that this argument cannot be used to defeat summary judgment because it is outside the scope of the pleadings. We agree with BBV.

Negligence per se can be shown if the plaintiff establishes four elements: (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation caused the plaintiff's injury; (3) the injury resulted from an occurrence the statute or regulation was designed to

prevent; and (4) the plaintiff was one of the class of persons the statute or regulation was designed to protect. (*Daum v. SpineCare Medical Group, Inc.* (1997) 52 Cal.App.4th 1285, 1306; Evid. Code, § 669, subd. (a)(1)–(4).) "All four elements must be shown in order for a claim of negligence per se to succeed." (*Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 347.)

Here, the SAC alleged that BBV was negligent because it "had a duty to inform" Bernice of the loan transaction based on Stuart and Hamilton's prior experience with Bernice. The SAC further alleged that BBV breached its duty "not to assign away its interest in the [deed of trust] once it learned that this matter was in pending litigation." Bernice did not allege in the SAC the claim she now raises—whether BBV committed negligence per se in violating ERISA and consumer protection laws. Nor did she allege the elements of negligence per se. Because this controversy was not framed in the SAC, her negligence per se arguments provide no basis for reversal. (See *FPI Development, Inc. v. Nakashima, supra*, 231 Cal.App.3d at pp. 381–382 [pleadings limit the scope of the issues on summary judgment]; *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342 [party seeking summary judgment need only address the issues actually pled].)

Bernice does not otherwise address the theories of negligence pleaded in her SAC or dispute that BBV met its burden to negate an element of her negligence claims.[8] As a result, she has not shown that she created a triable

---

[8] At various points in her appellate brief, Bernice contends BBV's conduct constituted negligence per se because it had a duty to not engage in "prohibited lending practices" and because it violated the cease-and-desist orders. Bernice does not elaborate on the first claim. To the extent it is based on BBV's alleged misclassification of the loan, we disregard that argument as outside the scope of the SAC. She also fails to establish that

23

issue of material fact as to her negligence cause of action, and summary adjudication as to that cause of action is affirmed. We also affirm the order denying Bernice's motion to vacate the judgment or for a new trial, as she does not present any argument for reversal of the order.

## II.    DISPOSITION

The judgment and the order denying appellant's motion to vacate the judgment or for a new trial are affirmed. Respondent to recover costs on appeal.

---

BBV violated the cease-and-desist orders in making the loan, as discussed above.

_____
Langhorne Wilson, J.

WE CONCUR:


_____
Banke, Acting P. J.


_____
Smiley, J.


A168874